UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RNA CORPORATION,<br><br>    Plaintiff and<br>    Counterclaim Defendant,<br><br>v.<br><br>THE PROCTER & GAMBLE<br>COMPANY,<br><br>    Defendant and<br>    Counterclaimant. | Civil File No. 1:08-cv-05953<br><br>**MEMORANDUM IN SUPPORT OF<br>DEFENDANT'S MOTION TO<br>AMEND COUNTERCLAIMS** |

Defendant / Counterclaimant The Procter & Gamble Company ("P&G") seeks leave to file the Answer and Amended Counterclaims attached as Exhibit 1 to this Memorandum.[1] The amended pleading adds no additional claims, no additional language, and, indeed, no changes to any language. The proposed amendment changes only the content of Exhibit A to the Counterclaims. Plaintiff has nonetheless refused to agree to the amendment. The requested amendment is necessary to clarify the scope of the trade dress at issue and to facilitate settlement of all potential claims between the parties.

## BACKGROUND

RNA Corporation ("RNA") filed a Complaint seeking declaratory judgment that RNA has not infringed P&G's trademark, design patents and trade dress rights in the packaging of P&G's HERBAL ESSENCES line of shampoos and conditioners. Doc. No. 1. P&G filed its

---

[1] P&G's counterclaims reference numerous voluminous exhibits that have not been modified in connection with P&G's proposed amendment. To limit the size of this filing, P&G has attached only the pleading and amended Exhibit A.

original Answer and Counterclaims, seeking damages and injunctive relief to prevent RNA's continuing infringement of P&G's trademark, trade dress and design patents.  *See* Doc. No. 11. Among the allegations in its Counterclaims, P&G alleged:

> 10.  In 2006, P&G introduced a new line of HERBAL ESSENCES hair care products, featuring a unique and distinctive trade dress shown on Exhibit A attached hereto (the "HERBAL ESSENCES Trade Dress").  Large amounts of time and money were expended by P&G in designing the HERBAL ESSENCES Trade Dress specifically so that products featuring the HERBAL ESSENCES Trade Dress would be readily distinguishable by consumers from competing products on store shelves.
>
> 11.  Among the HERBAL ESSENCES hair care products that P&G introduced in 2006 are a HELLO HYDRATION moisturizing shampoo and a HELLO HYDRATION moisturizing conditioner, each packaged in a container that, with its contents, appears blue.
>
> 12.  The HERBAL ESSENCES Trade Dress, including the HELLO HYDRATION trade dress, is unique and distinctive and consists of, among other elements, (a) a bottle with a sinuous shape featuring unexpected and asymmetrical curves; (b) the product brand name on the front label in white printing; (c) a holograph device on the top portion of the label; and (d) a vinelike or organic device on the top portion of the label.

Document No. 11.  P&G specifically alleged a claim of trade dress infringement based on "RNA's use of trade dress confusingly similar to P&G's HERBAL ESSENCES Trade Dress." *Id.* ¶ 44.

P&G filed a Motion for Preliminary Injunction, and the parties entered into a Joint Discovery Schedule to allow for expedited discovery prior to the hearing on P&G's motion. Among the few pages of documents RNA produced were documents showing that RNA was developing plans to copy additional types of shampoos and conditioners in the HERBAL

2

ESSENCES product line.[2] However, when the parties attempted to negotiate a settlement, RNA cited Exhibit A to P&G's Counterclaim and would not agree to an injunction that included any restriction regarding products beyond the HELLO HYDRATION product. Although the Counterclaim defines the HERBAL ESSENCES Trade Dress without reference to product name or bottle color, *see* Doc. No. 11 ¶ 12, RNA took the position that, because the only product depicted in Exhibit A is the HELLO HYDRATION product, an injunction cannot cover the entire product line and associated trade dress.

P&G believes its current pleading is broad enough to cover the entire product line and associated trade dress elements. However, to remove any issue regarding the scope of P&G's pleading, P&G seeks leave to amend Exhibit A to its Counterclaim, to include additional photographs of products sold in the HERBAL ESSENCES Trade Dress.

Although it is still very early in the case and no deadline for amending pleadings has been set, RNA refuses to consent to the amendment or to stipulate as to the scope of P&G's alleged trade dress. Accordingly, P&G was forced to bring this motion.

## ARGUMENT

Leave to file an amended pleading should be liberally granted. *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004); Fed. R. Civ. P. 15(a)(2). "[I]n the absence of delay, undue prejudice to the party opposing the motion, or futility of the amendment, leave should be freely given." *Eastern Natural Gas Corp. v. Aluminum Co. of Am.*, 126 F.3d 996, 999 (7th Cir. 1997). RNA raised none of those objections when it refused its consent to P&G's proposed amendment, and P&G only briefly addresses each of the three points below.

---

[2] The documents were marked by RNA as "Confidential – Subject to Protective Order" and are, therefore, not filed with the Court. If requested and with leave of the Court, P&G can file the documents under seal.

3

There has been no undue delay in bringing this motion.  P&G believes its current pleading covers all of its products packaged in the HERBAL ESSENCES Trade Dress.  Until RNA told P&G that it would not agree to an injunction beyond just the HELLO HYDRATION product, P&G had no reason to believe that it would need to amend its pleading.

Amendment of P&G's Counterclaims will cause no prejudice to RNA.  RNA has produced less than 50 pages of documents, and no depositions have been taken.  The Court has set no deadline for amendments to pleadings, and there is no discovery cutoff currently in place.  Thus, there is no need to alter an existing scheduling order.  In fact, P&G's amendment will do little, if anything, to alter the scope of discovery.  The purpose of the proposed amendment is to *remove* an issue from the case before additional discovery occurs and a settlement is reached.

Finally, P&G's amendment is not futile.  P&G's counterclaims state a claim for trade dress ownership, rights, and infringement with or without the proposed amendment to Exhibit A.  While P&G must establish those rights and RNA's infringement, RNA could not succeed on a motion to dismiss.

RNA has stated no ground for opposition to P&G's amendment other than its assertion that, thus far, RNA has copied only the HELLO HYDRATION product.  RNA therefore argues that P&G is not entitled to injunctive relief that goes beyond that one product.  The HERBAL ESSENCES Trade Dress infringed by RNA, however, covers an entire product line, and is defined in P&G's pleading without reference to a specific product or bottle color.  *See* Doc. No. 11 ¶ 12.  It makes little sense for P&G to resolve this dispute in a way that allows RNA to follow through with its plans to copy other products within the same line, leading to further litigation between the parties.  In any event, the appropriate scope of a permanent injunction is a matter

decided on the merits of the case; the issue has nothing to do with the standard for leave to amend a pleading.

## **CONCLUSION**

Accordingly, P&G respectfully requests leave to file the amended pleading attached as Exhibit 1 to this Memorandum, along with original Exhibits B – G.

DORSEY & WHITNEY LLP

Dated: June 8, 2009.	By:   /s/Heather D. Redmond
	Peter M. Lancaster (MN #0159840)
	   (Admitted Pro Hac Vice)
	Heather D. Redmond (MN # 0313233)
	   (Admitted Pro Hac Vice)
	Suite 1500, 50 South Sixth Street
	Minneapolis, MN 55402-1498
	Telephone:  (612) 340-2600

	MICHAEL BEST & FRIEDRICH LLP
	Paul F. Linn (Wis. Bar. No. 1009685)
	Christopher R. Parker (# 6270398)
	Two Prudential Plaza
	180 North Stetson Avenue
	Chicago, Illinois 60611
	Telephone:  (312) 222-0800

	*Attorneys for The Procter & Gamble Company*