UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RNA Corporation, | ) | |
| Plaintiff/counter-defendant, | ) ) ) | |
| v. | ) ) | Case No. 08-5953 |
| The Proctor & Gamble Company, | ) ) ) | Judge Zagel<br>Magistrate Judge Valdez |
| Defendant/counter-plaintiff. | ) | |

## RNA CORPORATION'S ANSWER TO THE AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIMS OF THE PROCTOR & GAMBLE COMPANY AND RNA CORPORATION'S AFFIRMATIVE DEFENSES

Plaintiff/counter-defendant, RNA Corporation ("RNA"), by and through its undersigned attorneys, answers the affirmative defenses and amended counterclaims of the defendant/counter-plaintiff, The Proctor & Gamble Company ("P&G"), as follows:

### AFFIRMATIVE DEFENSES

1. RNA's actions constitute trademark infringement under the Lanham Act § 32, 15 U.S.C. § 1114.

ANSWER: Denied.

2. RNA's actions result in unfair competition, trademark, and trade dress infringement in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

ANSWER: Denied.

3. RNA has infringed and continues to infringe the '139, '140, '730, and '884 patents owned by P&G.

ANSWER: Denied.

### AMENDED COUNTERCLAIMS

#### Parties, Jurisdiction, and Venue

1. P&G is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

ANSWER: Admitted.

12565\00010\513991v1

2. RNA is an Illinois corporation with its principal place of business in Blue Island, Illinois.

ANSWER: Admitted.

3. This is a civil action arising from RNA's misuse of P&G's trademarks and trade dress, and RNA's infringement of P&G's design patents. The claims alleged in this Counterclaim arise under the Lanham Act, 15 U.S.C. § 1051, *et seq.*; the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.*; and the Patent Act, 35 U.S.C. § 271, *et seq.*

ANSWER: RNA admits that this action arises under the Lanham Act and the Patent Act, but denies the remaining allegations of paragraph 3.

4. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over claims under Illinois law. In addition, because the matter in controversy exceeds $75,000, exclusive of interests and costs, and is between a citizen of a state and a citizen of another state, this Court also has jurisdiction under 28 U. S. C. § 1332.

ANSWER: Admitted.

5. This Court has personal jurisdiction over RNA by virtue of its commission of tortious acts within the state of Illinois and this District, its transaction of business within the State of Illinois and this District, and its contracts to supply goods in the State of Illinois and this District. The infringing products are available for sale, and have been sold, in this District.

ANSWER: RNA admits that this Court has personal jurisdiction over it because it transacts business within, and contracts to supply goods in, the State of Illinois and this District, but denies the remaining allegations of paragraph 5.

## Background

6. Established in 1837, P&G began as a small, family-operated soap and candle company in Cincinnati, Ohio. Today, P&G markets several hundred products to more than five billion consumers in some 140 countries, and the P&G community consists of over 100,000 employees working in almost 80 countries worldwide.

ANSWER: RNA lacks sufficient knowledge to admit or deny the allegations of paragraph 6.

7. P&G is one of the largest and most highly regarded manufacturers and sellers of consumer goods in the United States, with a long history of selling high quality products. P&G's

product line includes a wide array of products that are purchased by hundreds of millions of American consumers each year.

ANSWER: RNA lacks sufficient knowledge to admit or deny the allegations of paragraph 7.

8. P&G manufactures and markets a variety of personal care products, including hair care products such as shampoo and conditioning products. P&G devotes substantial effort, time, and resources to designing its packaging and graphics for such products. Packaging and graphics are important elements in marketing such products, because they serve both to distinguish the product from others and to represent and convey a product's quality and value to consumers.

ANSWER: RNA admits that P&G manufactures hair care products such as shampoo and conditioning products. Further answering, RNA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 8.

### P&G's Intellectual Property Rights

9. In November 2001, P&G acquired the company Clairol, Inc., including the HERBAL ESSENCES brands of hair care products and all intellectual property and goodwill associated with the products. Since that time P&G has marketed a variety of personal care products under the trademark HERBAL ESSENCES, including hair care products. HERBAL ESSENCES products are widely distributed and available in all leading channels of trade for personal care products, including supermarkets, pharmacies and mass merchandise stores.

ANSWER: RNA lacks sufficient knowledge to admit or deny if and when P&G acquired Clairol, Inc. Further answering, RNA admits that P&G sells products using the HERBAL ESSENCES brands of hair care products and that they are widely distributed.

10. In 2006, P&G introduced a new line of HERBAL ESSENCES hair care products, featuring a unique and distinctive trade dress shown on Exhibit A attached hereto (the "HERBAL ESSENCES Trade Dress"). Large amounts of time and money were expended by P&G in designing the HERBAL ESSENCES Trade Dress specifically so that products featuring the HERBAL ESSENCES Trade Dress would be readily distinguishable by consumers from competing products on store shelves.

ANSWER: RNA admits that P&G uses the packaging shown on Exhibit A on making HERBAL ESSENCES products, and further states that the existence of actionable trade dress is a legal conclusion to which no answer is required. To the extent necessary, RNA denies the

defined term, the characterizations of fact in the first sentence of this paragraph and any other factual allegations therein. RNA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 10.

11. Among the HERBAL ESSENCES hair care products that P&G introduced in 2006 are a HELLO HYDRATION moisturizing shampoo and a HELLO HYDRATION moisturizing conditioner, each packaged in a container that, with its contents, appears blue.

ANSWER: RNA lacks sufficient knowledge to admit or deny the allegations of paragraph 11.

12. The HERBAL ESSENCES Trade Dress, including the HELLO HYDRATION trade dress, is unique and distinctive and consists of, among other elements, (a) a bottle with a sinuous shape featuring unexpected and asymmetrical curves; (b) the product brand name on the front label in white printing; (c) a holograph device on the top portion of the label; and (d) a vinelike or organic device on the top portion of the label.

ANSWER: RNA admits that P&G uses the packaging shown on Exhibit A on making HERBAL ESSENCES products, and further states that the existence of actionable trade dress is a legal conclusion to which no answer is required. To the extent necessary, RNA denies the defined term, the characterizations of fact in the first sentence of this paragraph and any other factual allegations therein. RNA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 12.

13. The distinctiveness and appeal of the HERBAL ESSENCES Trade Dress has resulted in substantial industry recognition. The industry publication CPC Packaging, for example, named the HERBAL ESSENCES Trade Dress a winner of its 2007 Editor's Choice Awards.

ANSWER: RNA states that the allegations in his paragraph state a legal conclusion to which no answer is required. To the extent necessary, RNA denies the defined term, the characterizations of fact and states that it lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 13.

14. The distinctive features included in the P&G Trade Dress serve the purpose of identifying and distinguishing the HERBAL ESSENCES line of personal care products from the products of other sellers.

ANSWER: RNA states that the allegations in his paragraph state a legal conclusion to which no answer is required. To the extent necessary, RNA denies the defined term, the characterizations of fact and any other factual allegations therein.

15. The HERBAL ESSENCES Trade Dress is an inherently distinctive symbol of great consumer goodwill. As a result of both its inherent distinctiveness and the extensive sales and marketing of products packaged in the HERBAL ESSENCES Trade Dress, consumers associate such trade dress with P&G and view that trade dress as designating the source of P&G's HERBAL ESSENCES line of products.

ANSWER: RNA states that the allegations in his paragraph state a legal conclusion to which no answer is required. To the extent necessary, RNA denies the defined term, the characterizations of fact and any other factual allegations therein.

16. The HERBAL ESSENCES Trade Dress has achieved secondary meaning.

ANSWER: RNA states that the allegations in his paragraph state a legal conclusion to which no answer is required. To the extent necessary, RNA denies the defined term, the characterizations of fact and any other factual allegations therein.

17. The HERBAL ESSENCES Trade Dress is not functional.

ANSWER: RNA states that the allegations in his paragraph state a legal conclusion to which no answer is required. To the extent necessary, RNA denies the defined term, the characterizations of fact and any other factual allegations therein.

18. P&G is the owner of federal trademark Registration No. 3,337,074 for the circular logo prominently depicted on HERBAL ESSENCES hair care products (the "Herbal Essences Logo"). The registration is based upon a first use in commerce on June 30, 2006 and covers "hair care preparations." The Herbal Essences Logo is valid, subsisting and enforceable, and it has become a strong trademark symbolizing great consumer goodwill. A copy of the certificate of registration is attached hereto as Exhibit B.

ANSWER: RNA admits that P&G is the owner of Registration No. 3,337,074 and that a copy of the Certificate of Registration is attached as Exhibit B, but lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 18.

19. The Herbal Essences Logo is consistently used in connection with HERBAL ESSENCES hair care products. It is an inherently distinctive symbol of great consumer goodwill. As a result of both its inherent distinctiveness and the extensive sales and marketing of products packaged in the HERBAL ESSENCES Trade Dress, consumers associate the Herbal Essences Logo with P&G and view the trademark as designating the source of P&G's HERBAL ESSENCES lines of products.

ANSWER: RNA lacks sufficient knowledge to admit or deny the allegations of paragraph 19.

20. P&G is the owner of U.S. Patent No. D562,139 ("'139 patent"), issued on February 19, 2008, claiming "the ornamental design for a container, as shown and described." A copy of the '139 patent is attached hereto as Exhibit C. The '139 patent is valid and enforceable.

ANSWER: Admitted.

21. P&G is the owner of U.S. Patent No. D562,140 ("'140 patent"), issued on February 19, 2008, claiming "the ornamental design for a container, as shown and described." A copy of the '140 patent is attached hereto as Exhibit D. The '140 patent is valid and enforceable.

ANSWER: Admitted.

22. P&G is the owner of U.S. Patent No. D569,730 ("'730 patent"), issued on May 27, 2008, claiming "the ornamental design for a container, as shown and described." A copy of the '730 patent is attached hereto as Exhibit E. The '730 patent is valid and enforceable.

ANSWER: Admitted.

23. P&G is the owner of U.S. Patent No. D573,884 ("'884 patent"), issued on July 29, 2008, claiming "the ornamental design for a container, as shown and described." A copy of the '884 patent is attached hereto as Exhibit F. The '884 patent is valid and enforceable.

ANSWER: Admitted.

**RNA's Infringement of P&G's HERBAL ESSENCES Trademarks and Trade Dress**

24. RNA describes itself as a "cosmetic contract manufacturer and filler."

ANSWER: Admitted.

25. In response to P&G's introduction of its new line-up of HERBAL ESSENCES shampoos and conditioners in 2006 featuring the distinctive Herbal Essences Trade Dress, and fully aware of P&G's trademarks and HERBAL ESSENCES Trade Dress, RNA began selling shampoo and conditioner products labeled HYDRATING HERBAL SHAMPOO and HYDRATING HERBAL CONDITIONER, intended to mimic P&G's HERBAL ESSENCES Trade Dress and the specific features, including the blue color, of P&G's HELLO HYDRATION

shampoos and conditioners. RNA's HYDRATING HERBAL SHAMPOO and HYDRATING HERBAL CONDITIONER products have been marketed and sold under the packaging shown on Exhibit G attached hereto.

    ANSWER:    RNA admits that products it has manufactured for at least one third- party have been marketed and sold under the packaging shown on Exhibit G, but denies the remaining allegations of paragraph 25.

26. RNA's use of a circular image confusingly similar to the Herbal Essences Logo is intentional. Their confusing similarity is illustrated by the comparative images depicted here.



    ANSWER:    Denied.

27. RNA's packaging is intentionally confusingly similar to the HERBAL ESSENCES Trade Dress, as is illustrated by the comparative packaging depicted here:



    ANSWER:    Denied.

28. RNA's mimicry of the Herbal Essences Logo and the HERBAL ESSENCES Trade Dress was intended to cause, and does cause, likely confusion with P&G's trademarks and trade dress. Its mimicry damages the great and valuable goodwill inherent in the Herbal Essences Logo and the HERBAL ESSENCES Trade Dress.

ANSWER: RNA states that the allegations in his paragraph state a legal conclusion to which no answer is required. To the extent necessary, RNA denies the defined term, the characterizations of fact and any other factual allegations therein.

29. RNA's HYDRATING HERBAL SHAMPOO and HYDRATING HERBAL CONDITIONER packaging infringes both the Herbal Essences Logo and the distinctive elements of the HERBAL ESSENCES Trade Dress listed in paragraph 12.

ANSWER: Denied.

30. RNA includes in its packaging inconspicuous, small-print notices stating that "THIS PRODUCT IS NOT DISTRIBUTED BY PROCTOR [sic] AND GAMBLE" and "COMPARE to Herbal Essences Shampoo®." Such inconspicuous notices are not intended to prevent, and do not prevent, confusion with P&G's products.

ANSWER: RNA states that the labeling attached to Exhibit A states what it states, and speaks for itself, and otherwise denies characterizations of fact and any other factual allegations therein.

31. RNA's infringement has been willful, intentional, and deliberate, and conducted with the intention of trading on the goodwill and reputation of P&G.

ANSWER: Denied.

### FIRST COUNTERCLAIM

### Federal Trademark Infringement
### Lanham Act § 32, 15 U.S.C. § 1114

32. P&G restates and realleges paragraphs 1 through 31.

ANSWER: RNA incorporates its answers to paragraphs 1 through 31 of the Counterclaim as and for its answer to paragraph 32 of the Counterclaim.

33. P&G is the owner of the registered Herbal Essences Logo.

ANSWER: Admitted.

34. RNA's use of a circular image confusingly similar to the Herbal Essences Logo is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of RNA with P&G, or as to the origin, sponsorship, or approval of RNA's goods, services, or commercial activities by P&G. Among other types of confusion created by RNA, its actions create initial interest confusion on the part of consumers. RNA's use of a circular image confusingly similar to the Herbal Essences Logo constitutes trademark infringement under the Lanham Act § 32, 15 U.S.C. § 1114.

ANSWER: Denied.

35. RNA's infringement has caused, and will continue to cause, irreparable harm to P&G unless permanently enjoined. P&G has no adequate remedy at law.

ANSWER: Denied.

36. RNA has profited from its infringement of P&G's trademark rights and will continue to profit from it. RNA's actions are causing and will cause P&G monetary damage in amounts presently unknown but to be determined at trial.

ANSWER: Denied.

## SECOND COUNTERCLAIM

### Federal Unfair Competition (Trademark)
### Lanham Act § 43(a), 15 U.S.C. § 1125(a)

37. P&G restates and realleges paragraphs 1 through 36.

ANSWER: RNA incorporates its answers to paragraphs 1 through 36 of the Counterclaim as and for its answer to paragraph 37 of the Counterclaim.

38. P&G is the owner of common law trademark rights in the Herbal Essences Logo.

ANSWER: RNA states that the allegations in his paragraph state a legal conclusion to which no answer is required. To the extent necessary, RNA denies the defined term, the characterizations of fact and any other factual allegations therein.

39. RNA's use of a circular image confusingly similar to the Herbal Essences Logo is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of RNA with P&G, or as to the origin, sponsorship, or approval of RNA's goods, services, or commercial activities by P&G. Among other types of confusion created by RNA, its actions create initial interest confusion on the part of consumers. Such actions constitute unfair competition, false designation of origin, and palming off in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

ANSWER: Denied.

40. RNA's actions have caused, and will continue to cause, irreparable harm to P&G unless permanently enjoined. P&G has no adequate remedy at law.

ANSWER: Denied.

41. RNA has profited from its infringement of P&G's trademark rights and will continue to profit from it. RNA's actions are causing and will cause P&G monetary damage in amounts presently unknown but to be determined at trial.

ANSWER: Denied.

## THIRD COUNTERCLAIM

### Federal Unfair Competition (Trade Dress)
### Lanham Act § 43(a), 15 U.S.C. § 1125(a)

42. P&G restates and realleges paragraphs 1 through 41.

ANSWER: RNA incorporates its answers to paragraphs 1 through 41 of the Counterclaim as and for its answer to paragraph 42 of the Counterclaim.

43. P&G is the owner of trade dress rights in the packaging of its HERBAL ESSENCES product line, including its HELLO HYDRATION shampoos and conditioners.

ANSWER: RNA states that the allegations in his paragraph state a legal conclusion to which no answer is required. To the extent necessary, RNA denies the defined term, the characterizations of fact and any other factual allegations therein.

44. RNA's use of trade dress confusingly similar P&G's HERBAL ESSENCES Trade Dress on its HYDRATING HERBAL SHAMPOO and HYDRATING HERBAL CONDITIONER product line is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of RNA with P&G, or as to the origin, sponsorship, or approval of RNA's goods, services, or commercial activities by P&G. Among other types of confusion created by RNA, its actions create initial interest confusion on the part of consumers. Such actions constitute unfair competition, false designation of origin, and palming off in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

ANSWER: Denied.

45. RNA's actions have caused, and will continue to cause, irreparable harm to P&G unless permanently enjoined. P&G has no adequate remedy at law.

ANSWER: Denied.

46. RNA has profited from its infringement of P&G's trademark rights and will continue to profit from it. RNA's actions are causing and will cause P&G monetary damage in amounts presently unknown but to be determined at trial.

ANSWER: Denied.

## FOURTH COUNTERCLAIM

### Violation of the Illinois Deceptive Trade Practices Act
### 815 Ill. Comp. Stat. 510

47. P&G restates and realleges paragraphs 1 through 46.

ANSWER: RNA incorporates its answers to paragraphs 1 through 46 of the Counterclaim as and for its answer to paragraph 47 of the Counterclaim.

48. P&G owns rights in the HERBAL ESSENCES trademarks.

ANSWER: RNA states that the allegations in his paragraph state a legal conclusion to which no answer is required. To the extent necessary, RNA denies the defined term, the characterizations of fact and any other factual allegations therein.

49. RNA's actions constitute deceptive trade practices under Illinois law, 815 ILCS 510/1, *et seq.* RNA's infringement of P&G's HERBAL ESSENCES trademarks has caused, and unless enjoined will continue to cause, confusion or misunderstanding among the consuming public as to the affiliation, connection or association between RNA and P&G and/or as to the sponsorship or approval by P&G of RNA's products and services.

ANSWER: Denied.

50. P&G and the public have been and are likely to continue to be damaged as a result of RNA's deceptive trade practices. Unless enjoined by this Court, RNA will continue the foregoing deceptive and misleading trade practices, thereby confusing the public and causing P&G immediate and irreparable damage.

ANSWER: Denied.

51. P&G has no adequate remedy at law. Plaintiff will be irreparably injured because of its loss of goodwill and reputation stemming from RNA's actions.

ANSWER: Denied.

52. RNA has engaged willfully in a deceptive act under the Illinois Uniform Deceptive Trade Practices Act by knowingly using P&G's trademarks rights. RNA has and will continue to profit from it. RNA's actions are causing and will cause P&G monetary damage in amounts presently unknown but to be determined at trial.

ANSWER: Denied.

## FIFTH COUNTERCLAIM

## Design Patent Infringement
## 35 U.S.C. § 271

53. P&G restates and realleges paragraphs 1 through 52.

ANSWER: RNA incorporates its answers to paragraphs 1 through 52 of the Counterclaim as and for its answer to paragraph 53 of the Counterclaim.

54. P&G is the owner of the '139, '140, '730, and '884 patents.

ANSWER: Admitted.

55. RNA has infringed and continues to infringe the '139, '140, '730, and '884 patents by offering to sell and selling in the United States HYDRATING HERBAL SHAMPOO and HYDRATING HERBAL CONDITIONER products, the packaging for which is covered by the '139, '140, '730, and '884 patents.

ANSWER: Denied. Further answering, the bottle used by RNA is manufactured by G.K. Packaging, Inc. ("GK") who is the owner of U.S. Patent No. D581,276 ("'276 patent"), issued on November 25, 2008, claiming "the ornamental design for a bottle, as shown and described." A copy of the '276 patent is attached hereto as Exhibit 1. The '276 patent cites prior art that was considered by the Patent Examiner including the following patents: D562,139, D562,140, and D569,730. The '276 patent is presumably valid and enforceable. Therefore, there can be no design patent infringement by RNA.

56. RNA's actions have caused, and will continue to cause, irreparable harm to P&G unless permanently enjoined. P&G has no adequate remedy at law.

ANSWER: Denied.

57. RNA has profited from its infringement of P&G's design patent rights and will continue to profit from it. RNA's actions are causing and will cause P&G monetary damage in amounts presently unknown but to be determined at trial.

ANSWER: Denied.

58. RNA has willfully engaged in infringement of P&G's design patent rights.

ANSWER: Denied.

## AFFIRMATIVE DEFENSES OF RNA CORPORATION

As separate affirmative defenses to the Amended Counterclaim, on the grounds that such defenses are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, RNA further alleges as follows:

### FIRST AFFIRMATIVE DEFENSE

The Amended Counterclaim, or one or more of the purported claims set forth therein, fails to state a cause of action upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Amended Counterclaim, or one or more of the purported claims set forth therein, is barred by the doctrines of waiver, estoppel and/or laches.

### THIRD AFFIRMATIVE DEFENSE

P&G has not suffered injury to its business or property by reason of any conduct by RNA that infringed any rights either in P&G's patents, its trademarks, or its trade dress or that constituted unfair competition or deceptive business practices or that violated any other legal duty.

### FOURTH AFFIRMATIVE DEFENSE

RNA's conduct alleged herein constitutes the lawful exercise of its legal rights and does not infringe any rights in any of P&G's patents, its trademarks, or its trade dress or constitute unfair competition or deceptive business practices or violate any other legal duty.

## FIFTH AFFIRMATIVE DEFENSE

P&G's injuries and damages, if any, were caused in whole or in part by the conduct of third parties not operating for the benefit of RNA or under RNA's direction and control.

## SIXTH AFFIRMATIVE DEFENSE

If RNA's conduct alleged herein constitutes infringement of P&G's patent, trademark or trade dress rights, RNA is an innocent infringer and P&G is not entitled to any exemplary or exceptional remedies or to any statutory damages.

## SEVENTH AFFIRMATIVE DEFENSE

P&G is precluded from recovering damages, if any, as a result of its failure to properly mark its patented product.

## EIGHTH AFFIRMATIVE DEFENSE

P&G is precluded from recovering damages, if any, because one or more of the patents-in-suit is unenforceable due to P&G's inequitable conduct.

## NINTH AFFIRMATIVE DEFENSE

P&G is precluded from recovering damages, if any, because one or more of the patents-in-suit is unenforceable due to P&G's misuse of the patents.

## TENTH AFFIRMATIVE DEFENSE

There is no design patent infringement by RNA because the bottle used by RNA is manufactured by G.K. Packaging, Inc., who is the owner of U.S. Patent No. D581,276. The '276 patent cites prior art that was considered by the Patent Examiner including the following P&G patents: D562,139, D562,140, and D569,730. The '276 design patent is presumably valid and enforceable.

Respectfully submitted,

**RNA CORPORATION**

By:   s/ Frederic A. Mendelsohn
       One of Its Attorneys

Frederic A. Mendelsohn (6193281)
Daniel S. Klapman (6243250)
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash, 22nd Floor
Chicago, Illinois 60611
312-840-7000