**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RNA CORPORATION, | |
| Plaintiff/Counter-Defendant, | |
| v. | No. 08 C 5953<br>Judge James B. Zagel |
| THE PROCTER & GAMBLE COMPANY, | |
| Defendant/Counter-Plaintiff. | |

**MEMORANDUM OPINION AND ORDER**

**I.  PROCEDURAL HISTORY**

Defendant and Counterclaimant, The Procter & Gamble Company ("P&G"), is an Ohio corporation with its principal place of business in Cincinnati, Ohio.  P&G is a worldwide producer of branded products and services that sells products labeled HERBAL ESSENCES (including "hello hydration" moisturizing shampoo and conditioner) that feature P&G's registered trademarks and patented designs.  Plaintiff and Counterclaim Defendant RNA Corporation ("RNA") is an Illinois corporation that is a contract manufacturer of private label products for stores like Walgreens and Family Dollar, and has sold products labeled "Hydrating Herbal Shampoo" and "Hydrating Herbal Conditioner" (the "Family Dollar product").

On August 21, 2008, P&G filed a complaint in the Southern District of Ohio, praying that RNA be permanently enjoined from manufacturing its hydrating herbal shampoo and conditioner for Family Dollar, and alleging that RNA's product infringes P&G's unregistered trade dress rights as well as a certain registered trademark and certain design patents.  Neither Family Dollar nor GK Packaging, Inc. ("GK") – the actual designer and manufacturer of the allegedly infringing bottle – were named as defendants in the Ohio Complaint.

RNA filed a motion to dismiss the complaint in September of 2008 – two weeks after GK was issued a Notice of Allowance of a design patent for the design of the bottle used in the Family Dollar product.[1] RNA's motion to dismiss was granted on the basis of lack of personal jurisdiction on December 19, 2008, and the dismissal was subsequently affirmed by the Federal Circuit.

On October 16, 2008, while the Ohio action was still pending, RNA filed a declaratory judgment action in the Northern District of Illinois. On November 12, 2008, this court entered an agreed stay of proceedings in the Northern District pending a ruling on the Ohio motion to dismiss. While the Ohio dismissal was pending appeal, P&G asserted counterclaims in this court, followed by a February 2, 2009 motion for preliminary injunction. The parties spent a couple of months in unsuccessful negotiations regarding the preliminary injunction. Meanwhile, on March 31, 2009, RNA received notice from Family Dollar that Family Dollar was ending its supply agreement with RNA for the shampoo and conditioner at issue.

In light of its cessation of production of the Family Dollar product, on April 6, 2009, RNA filed a Motion to Deem P&G's Motion for Preliminary Injunction Moot and to Schedule a Settlement Conference. This court denied RNA's Motion to Deem Moot, but granted RNA's motion for a settlement conference. On April 16, 2009, the parties agreed to the scope of a preliminary injunction, which was entered by this court on May 19, 2009. A settlement conference was also set for June 12, 2009.

---

[1] RNA makes sure to note, on several different occasions, that Dinsmore & Shohl LLP – P&G's local counsel in Cincinnati – prosecuted the GK patent. However, even if a fact of this nature could provide legally significant repercussions, in this case I am disinclined to assume that each of the over 450 attorneys at Dinsmore & Shohl has intimate knowledge of every project that is completed by the firm – even within the same large office this is impractical.

At the settlement conference, the parties were able to reach a general agreement as to the scope of a permanent injunction, but could not resolve their dispute over damages. The parties agreed to continue to try and resolve their disagreement, but were unable to do so and required a second settlement conference with this court on August 21, 2009. At the second conference, the parties agreed to submit to a damage resolution procedure whereby they waived their rights to trial and agreed to submit all remaining disputes to Judge Zagel.

The Order Governing Damage Resolution Process, dated April 19, 2010, stipulates that the evidence shall consist of written submissions by the parties, and that, after trial, the court shall enter a final, binding, and non-appealable order stating the amount of damages–if any–that the court determines should be awarded to either party. Separate from any damage award, all remaining claims in the matter were to be dismissed with prejudice. In the Consent Decree and Permanent Injunction, also dated April 19, 2010, RNA explicitly denies "that it in any way acted in bad faith or with intent to violate any of P&G's intellectual property rights." Consent Dec. & Perm. Inj. at 2. The agreed injunction further emphasizes that it was created "in order both to resolve this dispute without further expense and without any admission of liability by either party." *Id*.

Both parties' final responses were submitted on June 15, 2010.

## II. ARGUMENTS OF THE PARTIES

Almost without exception, all of the testimony upon which either side bases its arguments comes from sworn statements given by each company's own employees.

### A. P&G'S CLAIMS FOR DAMAGES AND ATTORNEYS' FEES

3

Procter & Gamble argues that the relevant statutes provide it rights to RNA's profits, its own damages, attorneys' fees, "and an adjustment in the discretion of the court for equitable reasons." P&G Memo at 5.[2] One such statute is the Lanham Act, which states:

> When a violation . . . has been established, the plaintiff shall be entitled, subject to [statute] and the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action . . . In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.

P&G Memo[3] at 5, citing 15 U.S.C. § 1117(a).

P&G further argues that it should receive enhanced damages in the 'likely instance' that "imprecise damage calculations [would] fail to do justice." *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1127 (5th Cir. 1991), *aff'd on other grounds*, 505 U.S. 763 (1992). Continuing to cite *Taco Cabana*, P&G argues that, although enhancement of damages should be compensatory rather than punitive, it may be based on a finding of willful infringement.

P&G also cites the Patent Act reasonable royalty clause: "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer. . ." 35 U.S.C. § 284. Here, P&G argues, a reasonable royalty based upon RNA's unit sales is appropriate.

---

[2] From the first Memo to the last Reply, the main argument between the parties morphed from one that seemed to be strictly about damage calculations to one of infringement liability. I tried to accurately convey all of the arguments of the parties here, but the dramatic change in subject matter (and the thinly veiled animosity between the parties) yielded a plethora of excess arguments and protestations.

[3] For the sake of simplicity, I have labeled the parties' briefs as follows: P&G Memo, P&G Response, P&G Reply, RNA Memo, RNA Response, and RNA Reply.

4

Both the Lanham Act and the Patent Act also provide awards of attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a); 35 U.S.C. § 285. An example given by P&G in the Seventh Circuit of an exceptional trademark case "may be one in which the defendant engaged in purposeful or deliberate infringement of the plaintiff's mark." P&G Memo at 6. Basically, P&G argues that it is entitled to (1) RNA's profits; (2) P&G's damages; (3) P&G's attorneys' fees; and (4) an equitable damage award in the form of a reasonable royalty. Overall, P&G does not address liability in its first brief, aside from a short discussion of confusion as it related to creating a loss for P&G.

In its response brief, RNA argues that it received no profits from the Family Dollar product (and in fact suffered a loss). RNA contests the idea of customer confusion here, disparaging the manner in which P&G 'manipulated' its quarterly financial data here to show confusion. Indeed, RNA says, the record demonstrates a lack of consumer confusion because of the prominence of the Family Dollar logo on the allegedly infringing product. Basically, RNA asserts P&G's damage claim relies entirely on the existence of diverted sales, which it cannot satisfactorily establish with its financial data.

As far as the 'exceptional case' attorneys' fees, RNA argued "P&G can never be a prevailing party on its claims for patent infringement, nor can P&G prevail on its Lanham Act cases, as the elements of trade dress identified by P&G are neither protectable, nor present on the Family Dollar product. RNA also highlights that it is necessary to be a *prevailing* party in order to secure damages on all of the statute-based claims, indicating that P&G is not.

Substantively, RNA indicates that the presence of the GK patent demonstrates that the bottle used for the Family Dollar product was in fact patented and non-infringing. Additionally,

RNA reiterates its lack of profits and asserts that P&G's claimed trade dress is not protectable because it is not inherently distinctive and does not have a secondary meaning. Furthermore, RNA argues that P&G cannot establish the requisite likelihood of confusion because of the existence of the obvious Family Dollar mark coupled with the 40% price difference between the Family Dollar product and the P&G products. RNA also argues P&G's claimed elements of trade dress are not present on the Family Dollar Product, and the totality of the circumstances demonstrates that a consumer would not be confused as to the source of the Family Dollar product.

RNA argues it did not infringe P&G's trademark because of the "Compare to Herbal Essences . . ." language on the Family Dollar product's bottle, and further incorporates the lack of confusion arguments from its trade dress defense. RNA also contests P&G's stated claim for damages in more detail, analyzing the quarterly sales information. According to RNA, an analysis of quarterly sales shows that "P&G sales at Family Dollar **increased** while overall sales **decreased** in the second and last quarters that the alleged infringing product was sold at Family Dollar." RNA Resp. at 19.

In P&G's response, it emphasizes RNA's insistence on 'expensive' discovery between February and April 2009, delayed stipulation to a preliminary injunction, delayed stipulation to the eventually agreed-upon permanent injunction and delayed acceptance of this damages resolution process. Because of the delays and discovery, P&G asserts it is entitled to 'special case' damages and attorneys' fees.

With regard to RNA's alleged liability for infringement overall, P&G argues that RNA's failure to produce "any reason why its actions do not constitute patent, trademark, and trade dress

infringement," is tantamount to an admission of liability. However, P&G also attacks RNA's defenses to liability before asserting that standard liability analyses establish liability in this case.

P&G declares RNA is liable for trademark infringement because (1) the marks are confusingly similar; (2) the products are directly competitive and sold adjacent to each other in Family Dollar stores; (3) consumers exercise a low degree of care for this type of product; (4) the HERBAL ESSENCES logo is very strong; and (5) RNA deliberately copied P&G's product. P&G also mentions that discovery in this case did not advance far enough to generate evidence of actual confusion.

P&G argues RNA is liable for Trade Dress infringement because (1) the products were directly competitive; (2) consumers exercise a low degree of care for this type of product; (3) the HERBAL ESSENCES trade dress is strong both conceptually and in the marketplace; and (4) RNA had full knowledge of P&G's trade dress and intended to copy it, thus creating a presumption of likely confusion.[4]

P&G argues RNA is liable for Design Patent infringement because an ordinary observer would perceive P&G and RNA's designs to be substantially the same. P&G further argues that the GK Packaging patent, upon which RNA bases its defense, is irrelevant.

## B. RNA'S CLAIM FOR ATTORNEYS' FEES

In the conclusion of its opening brief, RNA requests an award of "reasonable attorneys' fees incurred in defense of P&G's claims." There is no evidence provided with the first memo as to what such attorneys' fees might entail, but there is a footnoted explanation that RNA does not wish to create a further dispute over the reasonableness of its fees, and intends to prepare a

---

[4] P&G offers no case law to support its 'presumption of confusion' assertion.

detailed declaration of its fees "upon a finding of exceptionality." P&G asserts that RNA's failure to submit evidence should establish a waiver of any claim RNA might have for attorneys' fees. P&G Response at 2. In its final brief, RNA maintains that it has not waived its claim for attorneys' fees, and submits evidence in the form of its attorney's affidavit testifying to $118,625.98 in attorneys' fees.

In support of its claim that P&G's conduct was exceptional under both 15 U.S.C. § 1117(a) and 35 U.S.C. § 285, RNA asserts that P&G's continued pursuit of this litigation is oppressive, "reeks of abuse of process," and is intended to "discipline the private label market." RNA's arguments in support of attorneys' fees under 35 U.S.C. § 285 seem to be based on two premises: (1) the infringement claims are baseless, and (2) P&G engaged in litigation misconduct. RNA Memo I at 15. RNA's arguments in support of attorneys' fees under the Lanham Act are based on the assertions that P&G's actions in the litigation at hand were "oppressive" and that its litigation was unfounded.

### III. APPLICABLE STANDARDS OF REVIEW

#### A. Agreed Injunction Standards

Neither party offers any specific case law regarding the determination of a prevailing party under the relevant trademark and patent statutes, and my own research has not revealed anything strikingly pertinent. However, there is some case law on the subject of prevailing party status generally – most of this case law seems to center around § 1983 claims and copyright claims.

The primary case on this subject is *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598 (2001), a Supreme Court case

dealing with attorneys' fees, the Fair Housing Act, and the Americans with Disabilities Act. In 2008 the Seventh Circuit applied and explained *Buckhannon* in addressing the matter of prevailing party status in a copyright case:

> [A] litigant "prevails" (for the purpose of fee-shifting statutes) when it obtains a "material alteration of the legal relationship of the parties." A judgment in a party's favor has such effect, which is why a consent decree confers prevailing party status even though everyone denies liability as part of the underlying settlement, and the judge takes no position on the merits.

> *Riviera Distribs. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008) (internal citations omitted).

The Federal Circuit has addressed the *Buckhannon* prevailing party status issue from a copyright standpoint as well, and has reached the conclusion that "the term 'prevailing party,' as that term is used in various federal attorneys' fees statutes, requires that the party has obtained some kind of relief from the court on the merits of the claim such that 'a material alteration of the legal relationship of the parties' has occurred." *Tavory v. NTP Inc.*, 297 Fed. Appx. 986, 989 (2008). However, the Federal Circuit goes on to explain in *Tavory* that, for example, "[m]any dismissals for want of jurisdiction do not affect the legal relationship of the parties because they are not decisions on the merits of the claim." *Id.* The *Tavory* court discusses that some dismissals for lack of jurisdiction have absolutely nothing to do with the merits of the case, while others may (e.g., a dismissal for lack of subject matter jurisdiction may result when the claim is found to be "essentially fictitious, wholly insubstantial, obviously frivolous, and obviously without merit"). *Id.*

**B. Liability Standards**

**1. Trademark**

In order to prove trademark infringement, the plaintiff must show (1) that it owns a protectable trademark; and (2) that the alleged infringer is using a trademark that is likely to cause confusion. *Ty, Inc. v. Jones Group*, 237 F.3d 891, 897 (7th Cir. 2001). The Seventh Circuit uses the following factors to evaluate the existence of a likelihood of confusion: (1) the similarity of the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the Plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiff. *Id*.

**2. Trade Dress**

To obtain relief for trade dress infringement under 15 U.S.C. § 1125(a), a party must show that (1) its trade dress is protectable, and (2) the trade dress of the accused product is confusingly similar. *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1151 (7th Cir. 1994). "A plaintiff satisfies the first prong, protectable trade dress, if it can show either that its trade dress is inherently distinctive or that it has acquired a secondary meaning." *Id*. quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). Trade dress is inherently distinctive if it is suggestive, arbitrary, or fanciful, because its intrinsic nature serves to identify a particular source of a product. *Two Pesos*, 505 U.S. 763 at 768.

Even if the plaintiff meets its burden on the first two prongs, if the defendant can show that the plaintiff's trade dress is "functional," then it has an affirmative defense to the allegation of infringement. *Id*.

**3. Design Patents**

In making a determination regarding design patent infringement, the court must view the patented design in its entirety to determine whether "the effect of the whole design is

10

substantially the same." *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 991-92 (Fed. Cir. 1993) (citation omitted). The "ordinary observer" test is used to make a determination as to the similarity of the two designs. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). Under the "ordinary observer" test:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.
>
> *Gorham Co. v. White*, 81 U.S. 511, 528 (1871)[5]

"The grant of a separate patent on [an] accused device does not automatically avoid infringement, either literal or by equivalency." *National Presto Indus. v. West Bend Co.*, 76 F.3d 1185, 1191 (Fed. Cir. 1996). "Whether a modified device is within the scope of the prior patent, literally or by equivalency, depends on the particular facts. The fact of separate patentability is relevant, and is entitled to due weight." *Id.* at 1192.

**C. Lanham Act**

Attorneys' fees under the Lanham Act are awarded according to the trial court's sound discretion. *S. Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625 (7th Cir. 2001). Regarding a plaintiff's recovery, the Lanham Act states:

> When a violation. . . has been established, the plaintiff shall be entitled, subject to [statute] and the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. . . In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.
>
> 15 U.S.C. § 1117(a).

---

[5] P&G does not cite anything more recent than 1871 regarding the ordinary observer test.

11

The standard for an award of attorneys' fees to the defendant is dependent upon whether the plaintiff's action was "oppressive." *Id*. at 627. "A suit is oppressive if it lack[s] merit, ha[s] elements of an abuse of process claim, and plaintiff's conduct unnecessarily increase[s] the cost of defending against the suit." *Id*., citing *Door Sys., Inc. v. Pro-Line Door Sys.*, 126 F.3d 1028, 1031 (7th Cir. 1997).

**D. Patent Act**

The Patent Act provides a similar measure of damages as the Lanham Act, only to patent claims. The Patent Act states that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer..." 35 U.S.C. § 284.

Section 285 of the Patent Act provides for attorneys' fees only where the case is "exceptional." 35 U.S.C. § 285. Exceptionality is found where the totality of the circumstances show that the losing party acted in bad faith, or at least with gross negligence, in bringing and/or maintaining the suit. *Interspiro USA v. Figgie Int'l Inc.*, 18 F.3d 927, 933 (Fed. Cir. 1994). The prevailing party must demonstrate "material inappropriate conduct . . . such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." *Brooks Furniture v. Dutailier Int'l*, 393 F.3d 1378, 1381 (Fed. Cir. 2005).

**IV. DISCUSSION**

**A. LEGAL DISCUSSION**

**1. P&G's Claims For Damages**

If there is not to be a determination of infringement made at this time, then P&G's claims for damages and attorneys' fees rely on a decision of whether the agreed injunction so altered the

legal relationship of the parties as to grant P&G prevailing party status. The case law at this time seems to give a district court judge the option of deciding whether a judgment on the merits is a necessary part of the 'alteration' of the parties' legal relationship. I am inclined to say (and in the context of this case, do say) that some judgment on the merits is indeed necessary, in which case the agreed injunction alone is not sufficient to grant P&G prevailing party status, and damages can only be awarded if a determination of infringement is made.

**Trademark Infringement**

To prove trademark infringement, P&G must show that (1) it owns a protectable trademark; and (2) RNA used a trademark that is likely to cause confusion. *Ty, Inc. v. Jones Group*, 237 F.3d 891, 897 (7th Cir. 2001). Here, P&G's ownership of a protectable trademark is indisputable, but the second infringement factor requires further analysis. The Seventh Circuit's likelihood of confusion factors are: (1) the similarity of the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the Plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiff. *Id.*

The photos submitted as exhibits by both parties indicate fairly similar marks that certainly suggest the same type of swirling natural imagery. However, the hologram and lack of actual foliage depicted in the HERBAL ESSENCES trademark seem to limit the possibility of confusion. Overall, the similarity of the appearance of the marks themselves does not obviously lean in favor of either party. The similarity of the products is very high, which weighs the second factor in favor of P&G. The third factor also favors P&G, as the products are sold through similar, and, as this case demonstrates, sometimes identical trade channels. P&G asserts that

13

consumers do not exercise much care in selecting which shampoos and conditioners to use, however the huge amount of time, effort, and money P&G spends educating the public about its product beyond just creating awareness of the brand name seems to suggest otherwise. Thus, without more evidence, the fourth factor cannot be found to weigh in either party's favor.

P&G has provided ample support indicating the strength of its mark, weighing the fifth likelihood of confusion factor in its favor. However, even P&G admits that discovery did not progress far enough for sufficient evidence to be collected showing whether or not actual confusion occurred. Thus, the sixth factor also cannot be evaluated for lack of evidence. The seventh and final factor may suffer the same lack, for all that has been successfully shown thus far is that RNA at least intended to make a legal generic substitute for the Herbal Essences product Such a substitute frequently evokes a popular brand name product, as here.

Thus, with only two out of seven factors weighing clearly in P&G's favor, and at least three more important factors suffering from the failure to complete discovery prior to the consent decree, it is impossible at this time to assign or deny liability to RNA.

**Trade Dress Infringement**

To obtain relief for trade dress infringement, P&G must show that (1) its HERBAL ESSENCES trade dress is protectable, and (2) RNA's trade dress is confusingly similar. *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1151 (7th Cir. 1994). P&G satisfies the protectable trade dress prong if it can show either that its trade dress is inherently distinctive or that it has acquired a secondary meaning. *Id*. Even if P&G meets its burden on the first two prongs, if the RNA can show that the P&G's trade dress is "functional," then it has an affirmative defense to the allegation of infringement. *Id*.

14

A great deal more evidence, including surveys and studies, is necessary to determine whether trade dress has acquired a secondary meaning. Thus, a secondary meaning determination cannot be made at this time. Trade dress is inherently distinctive if it is suggestive, arbitrary, or fanciful, because its intrinsic nature serves to identify a particular source of a product. *Two Pesos*, 505 U.S. 763 at 768. Here, the HERBAL ESSENCES trade dress is suggestive of something that is floral in nature, and its success in the marketplace and in the industry as evidenced by P&G's submissions suggests a strong source identification with the mark.

RNA argues that P&G's claimed trade dress is not protectable because the elements P&G identifies as protectable trade dress are not the same elements that are discussed in the publications and articles submitted by P&G. For the purposes of the liability determination at hand, the information provided is sufficient to at least create a presumption of protectable trade dress. The point becomes moot as, as discussed *supra* under "Trademark Infringement," there is insufficient evidence to make a determination of confusing similarity. P&G admits that discovery did not progress far enough for sufficient evidence to be collected showing whether or not actual confusion occurred. There is a similar deficiency in evidence necessary to make a clear finding of confusing similarity, which cannot be overcome without evidence of actual confusion.

Thus, there can be no determination of trade dress infringement at this time.

**Design Patent Infringement**

The ordinary observer test requires that I determine if, "in the eye of an ordinary observer, giving such attention as a purchaser usually gives," the P&G and Family Dollar product bottle designs are substantially the same, such that an observer would be deceived, inducing him to

15

purchase one supposing it to be the other. *Gorham Co. v. White*, 81 U.S. 511, 528 (1871)**.** Given my observations of photographs of the bottles at issue (RNA Response Exhibits A and B)**,** I find it quite difficult to imagine the ordinary observer would be deceived to the point of inducement to purchase the Family Dollar product when he meant to purchase the P&G product.

Without actually handling the products, I can conceive how there might be some initial confusion if the similarly colored competing products were combined together on a shelf. However, it seems to me that upon removal of the product from the shelf, the distinctly sharpened edges of the P&G product will be noticeably missing if one is holding the Family Dollar product. The P&G design has a more sophisticated quality to it overall that is lacking in the overall effect of Family Dollar product design.

There is some debate between the parties as to the relevance of the GK design patent. Its primary use at this juncture is to lend support to the lack of infringement of P&G's patented design by the Family Dollar product. RNA submitted an affidavit from Robert Kellerman, the CFO of GK Packaging, establishing that the design of the bottles used by RNA is the same design in the GK patent.[6] This design was purchased from GK by RNA for use with the Family Dollar product. The fact that the GK patent was awarded offers it the same presumption of validity that is claimed by P&G for its designs.

P&G complains that a "comparison of the GK patent (RNA Ex. G) to the bottles RNA sold shows that its bottles are actually more similar to the P&G patents." P&G Response at 3. I

---

[6] The first Declaration of Robert Kellerman was submitted to the Federal District Court for the Southern District of Ohio during the initial suit filed by P&G. It can be found at S.D. Ohio, Doc. No. 41, Ex. B. The court is allowed to "take judicial notice of matters in the public record, such as filings in other courts." *Langone v. Miller*, 631 F. Supp. 2d 1067, 1070 (N.D. Ill. 2009).

find that I must disagree with P&G. If anything, the small differences between the two-dimensional diagram of the GK design and the three-dimensional manifestation serve to further differentiate the Family Dollar product from the GK design. The "sharpened corners" frequently mentioned by P&G can actually more easily be seen on P&G's product design than GK's, and facilitate an overall distinction between the two designs.

Given my conclusions based on the ordinary observer test and the presence of GK's patent, which supports the nonobviousness of its design, I cannot find that the design of the Family Dollar Product infringed P&G's design patents.

**2. The Parties' Claims For Attorneys' Fees**

The Seventh Circuit's stance on prevailing party status does not appear to support either party's claim for attorneys' fees.

RNA's argument that it should win attorneys' fees in this case is not supported by the law, as even if the consent decree were found to have materially altered the legal relationship of the parties, it would certainly be in P&G's favor. That being said, RNA offers its own explanation of its prevailing party status in its Reply brief. RNA claims that, as a prevailing party does not have to have prevailed on all of its claims, "RNA need only 'prevail' on one of its claims or defenses (i.e. determination of non-infringement of P&G's trade dress, trademark, or one of the P&G patents) to establish technical entitlement to fees." RNA Reply at 3. RNA claims I have made it clear he was going to make a determination of liability at this stage, thereby choosing a prevailing party – regardless of whether an agreed injunction yields prevailing party status to either party. *Id*.

A thorough liability analysis based on what the parties have submitted demonstrates that, even if a mere determination of non-infringement were sufficient to secure RNA prevailing party

17

status, it is impossible to firmly reach such a determination on any of the counts at issue. The trademark and trade dress claims at issue clearly lack the evidentiary findings necessary here to fully carry out the required analyses. The design patent claim comes closest to a finding of non-infringement, but the lack of completed discovery leading up to the briefs before the court, as well as the lack of opportunity to present fully tangible evidence, prevent me from making an official finding of non-infringement here. Thus, while I do not necessarily agree that a mere determination of non-infringement on any count would be sufficient to establish prevailing party status, I need not reach a conclusion on the matter as no such determination can properly be made.

As to whether the consent degree alters the legal relationship between the parties to the extent necessary to grant P&G prevailing party status, as expressed *supra* under "P&G's Claims For Damages," it does not appear to do so. A requirement of at least some judgment on the merits in order to determine a prevailing party is a logical necessity for the continued encouragement of consent decrees, thus facilitating judicial economy. As such, the agreed injunction alone in this case is not sufficient to grant P&G prevailing party status, and damages can only be awarded on a legal basis if a determination of infringement is made – which has not occurred here.

**B. EQUITABLE DISCUSSION**

**1. P&G's Claims for Damages**

The above paragraph regarding the lack of prevailing party in this case, as well as the previously discussed inadequacy of evidentiary proceedings in this case prior to the agreed injunction, both support a decision that P&G has not demonstrated a sufficient claim for further equitable relief in this case.

**2. The Parties' Claims for Attorneys' Fees**

Each side cites the other as being responsible for excessive delays and expense in this case. The rancor verging on outright animosity between the two parties is regrettable (and spans numerous pages of emails, as well as appearing in the briefs before this court), but appears to have been equally expressed. Any net delay resulting from this difficult relationship is attributable to both parties (and is inherent in the adversarial nature of our system), and therefore neither party has demonstrated an equitable requirement for attorneys' fees.

**V. CONCLUSION**

There has not been enough data (under the parties' agreed process for adjudicating this current dispute) to properly establish or deny infringement liability to either party. Without a finding of liability or its absence, no prevailing party can be determined, and without a prevailing party, no attorneys' fees can be awarded according to statute. The equitable considerations for attorneys' fees indicate that it is fair for each party to pay its own attorneys' fees and nothing more.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: October 21, 2010